Darryl Leonard BAUSLEY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–97–00573–CR, 05–97–00574–CR.

Court of Appeals of Texas, Dallas.

July 1, 1999.

Anthony D. Lyons, Dallas, for Appellant.

Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for State.

Before Justices MORRIS, WHITTINGTON, and ROACH.

## OPINION

Opinion By Justice WHITTINGTON.

Darryl Leonard Bausley appeals his convictions for aggravated assault of two police officers. After finding appellant guilty, the jury assessed punishment at ten years' confinement in cause number 05–97–00573–CR and fifteen years' confinement in cause number 05–97–00574–CR. In four points of error, appellant contends the trial judge erred in denying his motion to quash the indictments and overruling his objections to the State's use of peremptory challenges. For the reasons that follow, we reverse the trial court's judgments and remand for further proceedings.

### BACKGROUND

On May 22, 1996, Dallas police officers Michael Armendariz and Brad Williams were patrolling southeast Dallas when they attempted to stop appellant for failing to signal before making a right-hand turn. After the officers activated their patrol lights, appellant began speeding and driving erratically. Appellant swerved across both lanes of traffic and drove on the sidewalks until he finally hit a street light pole at the intersection of Ervay Street and Grand Avenue. The officers stopped their car behind appellant's. After appellant got out of his car and pointed a gun at the officers, the officers drew their weapons and ultimately fired at appellant. Appellant ran away but was later arrested and indicted for aggravated assault of each of the officers.

The two cases were tried together. A jury panel was called to court and sworn. At the close of voir dire examination, appellant objected to the prosecutor's use of several peremptory challenges. The trial judge held a *Batson* hearing and, after considering the evidence and argument of counsel, overruled appellant's objections. Following a jury trial, appellant was convicted of the offenses charged and as-

sessed punishment in each case. These appeals followed.

### BATSON CHALLENGE[1]

In his second and third points of error, appellant contends the trial judge erred in overruling his objections to the State's use of peremptory challenges. Under these points, appellant contends we must reverse his convictions because (i) the State engaged in purposeful discrimination when it struck five minority prospective jurors from the jury panel and (ii) the trial judge erred in denying appellant the right to cross-examine the prosecutor whose opinion was the basis for excluding one of the prospective jurors.

When reviewing a *Batson* challenge, we examine the record in the light most favorable to the trial judge's ruling. *See Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App.1988). We reverse the trial judge's ruling only when it is clearly erroneous. *See Esteves v. State,* 849 S.W.2d 822, 823 (Tex.Crim.App.1993); *Harris v. State,* 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). A ruling is clearly erroneous when, after searching the record, we are left with the "definite and firm conviction that a mistake has been committed." *Hill v. State,* 827 S.W.2d 860, 865 (Tex. Crim.App.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). If the trial judge's ruling is supported by the record, including the voir dire, the prosecutor's explanation of her peremptory challenges, appellant's rebuttal, and any impeaching evidence, then the trial judge's ruling is not clearly erroneous. *See Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *Cantu v. State,* 842 S.W.2d 667, 689 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).

---

**1.** *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ To challenge the State's use of peremptory strikes under *Batson*, a defendant must first make a *prima facie* showing that the State exercised peremptory strikes on the basis of race. *See Batson*, 476 U.S. at 96, 106 S.Ct. 1712; *see also Harris*, 827 S.W.2d at 955. Once a defendant makes a *prima facie* showing of purposeful discrimination, the State must then provide a race neutral explanation for striking the prospective jurors in question. *See Batson*, 476 U.S. at 97–98, 106 S.Ct. 1712; *Harris*, 827 S.W.2d at 955. This step of the process does not demand a persuasive or even plausible explanation; rather, the State's reason for the strike will be deemed race neutral unless a discriminatory intent is inherent in the prosecutor's explanation. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). If the State provides a race neutral explanation for its strikes, the defendant must rebut the State's explanation or show that the explanation was merely a sham or pretext. *See Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991). To meet this burden, the defendant may call witnesses and introduce evidence just as in any other evidentiary hearing. *Johnson v. State*, 959 S.W.2d 284, 290 (Tex.App.-Dallas 1997, pet. ref'd). The defendant has the ultimate burden of persuasion to establish that the allegations of purposeful discrimination are true. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769; *Williams v. State*, 767 S.W.2d 872, 874 (Tex.App.-Dallas 1989, pet. ref'd) (en banc).

■ Although appellant claims, under his second point, that the trial judge erred in finding the State provided a race neutral explanation for striking prospective juror number 11, we disagree. Appellant, an African–American, objected to the State's use of peremptory strikes on five African–American prospective jurors. In response to appellant's objections, the prosecutor explained why she struck each individual. According to the prosecutor, she struck juror number 11, Mr. Ogbugbulu, because he was rated a "bad" juror "by the DA's office." The prosecutor was referring to a rating system used by the Dallas County District Attorney's Office to classify prospective jurors based on previous jury service. In reviewing the explanation given by the State for striking a potential juror, we look at the facial validity of the explanation. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769 (citing *Hernandez*, 500 U.S. at 358–59, 111 S.Ct. 1859). This Court has previously held that a bad record during prior jury service is a race neutral explanation for striking a prospective jury member. *Webb v. State*, 840 S.W.2d 543, 545–46 (Tex.App.-Dallas 1992, no pet.) (citing *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex.App.-Dallas 1990, pet. ref'd)). Because the State articulated a race neutral reason for striking Mr. Ogbugbulu, we conclude the trial judge did not err in finding the State rebutted appellant's *prima facie* showing. We overrule appellant's second point of error to the extent it addresses the State's strike of Mr. Ogbugbulu.

■ Under his third point, appellant contends the trial judge erred in denying appellant the opportunity to cross-examine the prosecutor whose opinions were the basis for Mr. Ogbugbulu's exclusion. Once the State provided a race neutral explanation for its strike, appellant was required to rebut the State's explanation or to show the explanation was merely a sham or pretext. *See Williams*, 804 S.W.2d at 101. The burden to rebut the State's race neutral explanation is substantial, and often there is little evidence to show purposeful discrimination. *See Mandujano v. State*, 966 S.W.2d 816, 821 (Tex.App.-Austin 1998, pet. ref'd). It is essential that the opponent of the strike be given the opportunity to demonstrate that the State's race neutral explanations are untrue or pretextual. *Yarborough v. State*, 947 S.W.2d 892, 906 (Tex.Crim.App.1997) (Baird, J., dissenting).

In these cases, appellant challenged the prosecutor's explanation, noting that Mr. Ogbugbulu was a very alert, cooperative juror who participated in voir dire and answered all questions asked of him. Appellant asked the trial judge to "make a decision as to what makes this juror a bad juror." The following then occurred:

COURT: Well, the only way they would be able to determine [why he was rated a bad juror] is [to] find a person who's prosecuted the case, because they're the one that rated them. I'm assuming you-all didn't rate the people. Somebody else rated the people. When you're going on based on their report whether they're black, white, purple or green, you're striking them because they were rated as bad.

STATE: Yes, ma'am, that's exactly correct.

DEFENSE: For this record, we want that person that rated them as bad jurors for this Court to know why they were rated as a bad juror.

STATE: Your Honor -

DEFENSE: Excuse me. I can't judge or articulate for this Court or examine the State as to [a] racially neutral reason if I don't know the information by which they're striking these jurors. If they're just pulling answers out of the air that someone rated them a bad juror—the fact of the matter is, this team of Ms. Cutler's sat through voir dire. The fact of the matter is, Ms. Cutler should be able to examine the jurors, voir dire jurors with respect to her concerns[.] Ms. Cutler should not be allowed to come into court, Judge, during this hearing and articulate to the Court without asking the jury any questions about any concerns and simply state, well, somebody else rated them as a bad juror so I'm going to rate them as a bad juror particularly,

Judge, when I'm raising a suspicion as to why they struck the juror and it happens to be another black juror.

At the conclusion of the discussion, the trial judge denied appellant's request to question the prosecutor who had rated Mr. Ogbugbulu as a bad juror. Appellant assigns this ruling as error. We agree.

The purpose of a *Batson* hearing in a criminal case is to ensure that the State does not exclude a person from jury service for an improper reason-in these cases, race. *See Mandujano*, 966 S.W.2d at 818. By refusing to allow appellant to question the prosecutor who rated Mr. Ogbugbulu as a bad juror, the trial judge denied appellant the opportunity to develop evidence that the State's race neutral explanations were, in fact, untrue or pretextual. *See Yarborough*, 947 S.W.2d at 906. In these cases, the judge allowed appellant to question prosecutors Nancy Cutler and Rick Jackson about their strikes. In response to appellant's questions, Jackson stated that although he did not sit through voir dire, he was present during the *Batson* hearing and "gave [Cutler] some advice on how to phrase some of her answers." Jackson testified that the jury list identifying Mr. Ogbugbulu as a bad juror "was run" by an investigator for the Dallas County District Attorney's Office. According to Jackson, the list read, "'94 robbery, bad, not guilty." When appellant asked him to explain what the notation meant, Jackson replied, "I cannot answer that question. I did not participate in that particular trial." When asked why Mr. Ogbugbulu was rated a bad juror, Jackson responded, "I can't give you that answer. I was not a part of that trial to my knowledge."[2] Thus, the only way appellant could have shown that the State's rating was racially biased was by questioning the prosecutor who previously rated Mr. Ogbugbulu. By limiting appellant's question-

2. Contrary to the State's assertion in its brief, the record does not show that "Juror Number 11 was rated as a bad juror because of returning a not guilty verdict in another case." In fact, Assistant District Attorney Jackson repeatedly testified he could *not* state why Mr. Ogbugbulu had been rated a bad juror.

ing to prosecutors who admitted they did not know why Mr. Ogbugbulu was rated a bad juror, the trial judge denied appellant his basic right under *Batson* to rebut the *only* reason given by the State to strike Mr. Ogbugbulu. We find this particularly troubling in light of the prosecutor's almost complete failure to question Mr. Ogbugbulu.[3]

■■■■ Furthermore, we reject the State's argument that appellant "failed to establish sham or pretext by questioning the credibility of the prosecutor who relied on the [State's rating] system." The State's argument ignores the fact that appellant (i) questioned Cutler and Jackson, who testified they did not know how or why the rating was given, and (ii) was denied the right to question the prosecutor responsible for the rating. Under the State's logic, we would require a defendant to rebut the State's reason for a strike ("bad juror rating") but would deny him the right to call *the only witness* who could testify with personal knowledge about the rating. Under this scenario, the defendant would never be able to demonstrate sham or pretext. While we agree that, in most cases involving *Batson* hearings, it will be the persuasiveness of the prosecutor's justification (and, thus, the prosecutor's credibility) which ultimately determines whether a strike is racially based, that is not the case here. In cases like this (where the State strikes a prospective juror based solely on a previous juror rating but fails to give any explanation of or criteria for the rating system), it is the credibility of the prosecutor who rated the juror that is at issue. *See Webb*, 840 S.W.2d at 546 ("We do not condone the use of a list by the prosecutor that gives no explanation for its categorization of previous jury ser-

vice or does not state any criteria for inclusion on the list or in a particular category. The use of this type of list too easily allows the possibility of misuse by an unscrupulous prosecutor wishing to circumvent the *Batson* issue.").

■■■■ Having concluded the trial judge erred, we must now determine whether this error is subject to a harm analysis under rule 44.2(a) of the rules of appellate procedure.[4] All trial error is subject to a harm analysis except for "certain federal constitutional errors labeled by the United States Supreme Court as 'structural.'" *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim.App.1997) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Structural defects in the trial mechanism are defects that affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246. To date, neither the United States Supreme Court nor the Texas Court of Criminal Appeals has squarely addressed whether *Batson* error is subject to a constitutional harm analysis. *Batiste v. State*, 888 S.W.2d 9, 13 (Tex.Crim.App.1994); *cf. Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Crim.App.1989) (after concluding that prosecutor had exercised peremptory challenge based solely on race, court of criminal appeals reversed judgments of court of appeals and trial court and remanded for new trial without performing harm analysis). We note, however, that the Supreme Court has determined that racial discrimination in the process of selecting a grand jury is not amenable to a harm analysis because it calls into question the objectivity of the institutional factfinder and "undermines the structural integrity of the

---

**3.** The only questions the prosecutor asked Mr. Ogbugbulu during voir dire were how to pronounce his name and whether he would be able "to judge someone by their actions alone?" In response to the latter question, Mr. Ogbugbulu responded that he could.

**4.** "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a).

criminal tribunal itself." *Vasquez v. Hillery,* 474 U.S. 254, 264–65, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (plurality opinion); *see Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246; *Batiste,* 888 S.W.2d at 13.

After examining these cases, we see no meaningful distinction between the issues and concerns raised in the unlawful exclusion of members of the defendant's race from a grand jury and a petit jury. Like the selection process of a grand jury, the jury selection process at trial affects the framework and structural integrity of the criminal tribunal as well as the fairness of the underlying proceeding. And like the racial discrimination in the grand jury selection process in *Vasquez,* the *Batson* error in these cases "calls into question the objectivity of those charged with bringing a defendant to judgment." *See Vasquez,* 474 U.S. at 264. For these reasons, we conclude the *Batson* error occurring in this case is not subject to a harm analysis. *See Vasquez,* 474 U.S. at 264, 106 S.Ct. 617 (when objectivity of underlying process challenged, reviewing court can neither indulge presumption of regularity nor evaluate resulting harm).

We conclude the trial judge erred in denying appellant the right to question the prosecutor responsible for rating Mr. Ogbugbulu as a bad juror, in the absence of any other explanation at the *Batson* hearing for that rating, and that this type of error is not subject to a harm analysis. Accordingly, we sustain appellant's third point of error. Because of our disposition of appellant's second and third points of error, we need not address his remaining points of error. *See* Tex.R.App. P. 47.1.

We reverse the trial court's judgments and remand these causes for further proceedings consistent with this opinion.