NUMBER
13-01-408-CR

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

DONNIE CONYERS,                                                                        Appellant,

 

                                                             v.

 

THE
STATE OF TEXAS,                                                                  Appellee.

 

       On appeal from the 319th District
Court of Nueces County, Texas.

 

                                     MEMORANDUM OPINION

 

                         Before
Justices Hinojosa, Yañez, and Garza

                            Memorandum
Opinion by Justice Yañez

 








By nine issues, appellant pro se Donnie
Conyers challenges his conviction for aggravated assault[1]
after a jury found him guilty and the trial court assessed punishment at
fifteen years confinement.  Specifically,
appellant contends (1) the evidence is legally and factually insufficient to
support his conviction (issues one and two), (2) the trial court erred in
denying his motion for directed verdict (issue three), (3) the trial court
erred in admitting the knife allegedly used by appellant (issue four), (4) the
evidence is legally and factually insufficient to support the jury=s deadly weapon finding (issue five), (5) the
prosecutor engaged in prosecutorial misconduct (issues six and seven), (6) the
trial court erred in admitting his pen-packet because it was not properly
authenticated (issue eight), and (7) the trial court erred by overruling his Batson
challenge (issue nine).[2]  We affirm.

Applicable Law

The penal code provides in pertinent part:

' 22.02 Aggravated Assault

 

(a) A person commits an offense if the person
commits assault as defined in ' 22.01 and the person:

 

(1) causes serious bodily injury[3]
to another, including the person=s spouse;  or

 

(2) uses or exhibits a deadly weapon[4]
during the commission of the assault.[5]

 

Legal and Factual Sufficiency








Claims of legal insufficiency of evidence are
reviewed by examining the evidence in the light most favorable to the verdict
and determining whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.[6]  We measure the legal sufficiency of the
evidence against the elements of the offense as defined by a hypothetically correct
jury charge for the case.[7]  ASuch a charge would be one that accurately sets out
the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the
defendant was tried.@[8]

The jury, as the trier of fact, may use common sense
and apply common knowledge, observation, and experience gained in ordinary
affairs when giving effect to the inferences that may be reasonably drawn from
the evidence.[9]  As fact finder, the jury is the exclusive
judge of the credibility of witnesses and the weight to be afforded their
testimony.[10]  The jury is free to accept one version of the
facts, reject another, or reject all or any of a witness's testimony.[11]








In a factual sufficiency review, we view all of the
evidence in a neutral light, and we will set the verdict aside only if the
evidence is so weak that the verdict is clearly wrong and manifestly unjust, or
the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met.[12]  We are not bound to view the evidence in the
light most favorable to the prosecution, and may consider the testimony of all
the witnesses.[13]  Disagreeing with the fact finder's
determination is appropriate only when the record clearly indicates that such a
step is necessary to arrest the occurrence of a manifest injustice; otherwise,
due deference must be accorded the fact finder's determinations, particularly
those concerning the weight and credibility of the evidence.[14]  A proper factual sufficiency review must
consider the most important evidence that the appellant claims undermines the
jury=s verdict.[15]       

Analysis

By his first two issues, appellant challenges the
legal and factual sufficiency of the evidence to support his conviction.  By issue three, appellant contends the trial
court erred in denying his motion for directed verdict.[16]  

 








Specifically, appellant argues that the evidence
presented at trial, including the location of the victim=s wounds, shows a Apossibility@ that the wounds Awere
self-inflicted.@  Appellant
argues that the jury Awas not given the opportunity to adequately
entertain the reasonable alternate hypothesis@ that
the victim stabbed and strangled herself to ensure that appellant would be sent
to prison, thereby depriving him of custody of his children.  According to appellant, the evidence is
factually insufficient because the victim=s testimony Acould not prove that her injuries were not
self-inflicted.@ 

In his fifth issue, appellant contends the evidence
is legally and factually insufficient to support the jury=s finding that the knife used in the assault was a
deadly weapon.  Appellant argues the
evidence is insufficient because he contends the victim=s wounds were self-inflicted.   

At trial, the victim, appellant=s wife, testified that he stabbed her in the back
and chest, choked her, and continually threatened her life.  She testified that this episode did not end
until he saw blood on her shirt, at which time he allowed her to go to a
hospital.  The victim=s treating physician, a trauma surgeon, testified
that the four-to-six centimeter stab wounds in her back and chest and the
bruises on her neck from strangulation, while not resulting in life-threatening
injury, were potentially fatal because of the close proximity to the spinal
column and heart.  This physician and the
county medical examiner, both aware of the legal definition of Adeadly weapon,@ also expressed the opinion that the blade of the
knife, while only five centimeters long, was used or intended to be used as a
deadly weapon.  These doctors further
testified that human hands could cause serious bodily injury or death if used
to strangle someone.[17]









Appellant presented no witnesses or evidence at
trial.  During closing argument, his
attorney suggested that the Areal issue@ in the case was Awhether
or not [appellant] attacked [the victim] at all.@  However, no evidence was presented at trial
in support of appellant=s hypothesis that the victim=s wounds were self-inflicted.  The trial court correctly instructed the jury
that the arguments of the attorneys were not to be considered as evidence.[18]  

After reviewing this record in a light most
favorable to the verdict, we hold that the evidence was legally sufficient to
support the conviction.  Likewise,
viewing the evidence in a neutral light, we hold that the evidence was
factually sufficient to support the verdict. 
A rational juror could have found the Aserious
bodily injury@ element, as there was evidence of the victim=s substantial risk of death or protracted loss or
impairment of the function of her bodily members or organs.[19]  A rational juror could have also found that
the appellant=s knife and hands were used or intended to be used
as deadly weapons, based on the victim=s testimony and the doctors= opinions.[20]  We also conclude that proof of appellant=s guilt and the deadly weapon finding is not so
obviously weak as to undermine confidence in the jury=s determination, nor is it greatly outweighed by
contrary proof.[21]  We overrule appellant=s first, second, third, and fifth issues.








In his fourth issue, appellant contends the trial
court erred in admitting the knife into evidence because its probative value
was greatly outweighed by the danger of unfair prejudice.[22]  However, appellant=s counsel stated that he had Ano objection@ to admitting the knife into evidence.  Thus, appellant has failed to preserve any
issue for our review.[23]  We overrule appellant=s fourth issue. 

In his sixth and seventh issues, appellant argues
that the prosecutor engaged in Aprosecutorial misconduct.@  Specifically,
appellant complains that at the punishment phase of trial, on cross-examination
of a witness for appellant, the prosecutor asked the witness the following two
questions: (1) AWere you aware that he broke his second wife=s jaw?@ and (2) AWere you aware that he kidnapped his children for
one year and hid out from his first wife?@[24]  The record
reflects that no objection was raised to the questions.  Accordingly, appellant has failed to preserve
any issue for review.[25]  We overrule appellant=s sixth and seventh issues. 








In his eighth issue, appellant contends the trial
court erred during the punishment phase of the trial by admitting evidence that
was not properly authenticated. 
Specifically, appellant complains that the court erred in admitting a
pen-packet that was not properly authenticated. 
At trial, appellant objected to admission of the pen-packet under Texas
Rules of Evidence 902(1) and 902(2).[26]  On appeal, however, appellant complains that
the pen-packet was Anot properly authenticated under Rule 902.4 [sic]
Texas Rules of Evidence.@  Because
appellant=s contention on appeal is different from his trial
objection, he has waived any alleged error.[27]

In his brief, appellant also complains of the
admission of State=s Exhibits 3 and 4, contending these exhibits were
not properly authenticated under Rule 902(4). 
At trial, appellant objected to Apage 2 of Exhibit No. 3" and Exhibit 4 as Anot authenticated.@  Assuming, without deciding, that appellant
preserved the issue, we conclude that any error in the admission of Exhibits 3
and 4 was harmless.  Exhibits 3 and 4 are
copies of documents on file with the Sacramento Superior Court reflecting
appellant=s prior convictions for drug possession and
trafficking.  The victim testified,
without objection, to the same facts that the documents reflect: that appellant
was convicted of heroin possession in California, extradited from California to
Florida, and convicted of conspiracy to traffic cocaine and trafficking cocaine
in Florida.  It is a settled rule that
any error in admission of evidence is cured by admission of the same evidence
elsewhere without objection.[28]  We overrule appellant=s eighth issue.   









In his ninth issue, appellant complains that the
trial court erred by overruling his Batson challenge.  Appellant argues that (1) the State=s strikes were gender-oriented, in that eight of its
ten strikes were against men and (2) A[t]he group of former jurors that had voted not
guilty in other criminal cases were systematically excluded by the state which
deprived the defendant due process guaranteed him under the law.@

Improper strikes based on gender are treated equally
at law as strikes based on race; both are universally disapproved for identical
reasons.[29]  When reviewing a Batson challenge, we
examine the record in the light most favorable to the trial judge's ruling and
reverse only when the ruling is clearly erroneous.[30]  A ruling is clearly erroneous when, after
searching the record, we are left with the definite and firm conviction that a
mistake has been committed.[31]  If the trial judge's ruling is supported by
the record, including the voir dire, the prosecutor's explanation of her
peremptory challenges, appellant's rebuttal, and any impeaching evidence, then
the ruling is not clearly erroneous.[32]









A Batson challenge generally gives rise to a
three‑step process.[33]  First, the defendant must make a prima facie
case that a venire member was peremptorily excluded on the basis of race or
gender.[34]  Next, the prosecution must come forward with
race or gender‑neutral reasons for the peremptory strike.[35]  A neutral explanation in this context means
an explanation that is merely based on something other than the race or gender
of the juror.[36]  Finally, the defendant has the opportunity to
rebut the State's explanations.[37]  The burden of persuasion remains with the
defendant to prove purposeful discrimination.[38]  It is in judging the trial court=s decision at step three that the Aclearly erroneous@
standard of appellate review is applied.[39]  In Purkett v. Elem, the United States
Supreme Court explained that Aunless a discriminatory intent is inherent in the
prosecutor's explanation, the reason offered will be deemed race neutral.@[40]

Here, the prosecutor explained why the State had
exercised each of its ten strikes.[41]








Following the State=s
explanation, the following exchange occurred:

Q [Defense counsel]: Okay.  And your purpose in exercisingB the fact that more than a proportional number of
males were struck, it=s your testimony that that was just a coincidence?

 

A [State]: Yes. 
Absolutely.

 

Q [Defense counsel]: Pass the witness.

 

[Court]: Okay. 
Anything else?

 

[State]: No Your Honor.

 

[Court]: All right. 
Anything else, [counsel]?

 

[Defense counsel]: Just, we add an additional
challenge, Your Honor, that the group of jurorsB
former jurors that have voted not guilty in criminal cases were systematically
excluded by the exercise of preemptory [sic] challenges by the State which
deprives the defendant of due process under the 14th amendment. 

 

[Court]: All right. 
Of anything else?

 

[State]: No, Your Honor.

 

[Court]: All right. 
And your Batson challenge is denied, and we=ll proceed with the trial.  And I will see you-all back here at 1:30.

 

We conclude that none of the State=s explanations reflect an inherently discriminatory
intent.  Appellant did not attempt to
rebut the State=s reasons. 
The trial court=s finding that the State=s explanations were gender-neutral is supported by
the record and is not clearly erroneous.[42]  We overrule appellant=s ninth issue. 








Having considered all of appellant=s issues, they are all either overruled or
waived.  The judgment of the trial court
is AFFIRMED.

 

                                                              
                                                       

LINDA REYNA YAÑEZ,

Justice

 

 

 

Do
not publish.  Tex. R. App. P. 47.2(b).

 

Memorandum
Opinion delivered and filed 

this
the 25th day of May, 2006.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











[1] See Tex. Pen.
Code Ann. ' 22.02 (Vernon Supp. 2005).





[2]
See Batson v. Kentucky, 476 U.S. 79 (1986).





[3] A>Serious bodily injury= means bodily injury that creates a
substantial risk of death . . . or protracted loss or impairment of the
function of any bodily member or organ.@  Tex. Pen. Code Ann. ' 1.07(46) (Vernon Supp. 2005).





[4] A>Deadly weapon= means:  . . . anything that in the manner of its use
or intended use is capable of causing death or serious bodily injury.@ 
Tex. Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon Supp.
2005).





[5]
Tex.
Pen. Code Ann. ' 22.02 (Vernon Supp. 2005).





[6]
Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim.
App. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  





[7]
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.BCorpus Christi 2002, pet. ref'd).





[8]
Malik, 953 S.W.2d at 240. 





[9]
Booker v. State, 929 S.W.2d 57, 60 (Tex. App.BBeaumont 1996, pet. ref'd). 





[10]
Tex.
Code Crim. Proc. Ann.
art. 38.04 (Vernon 1981); Chambers v. State, 805 S.W.2d 459, 461 (Tex.
Crim. App. 1991). 





[11]
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim.
App. 1981). 





[12]
Escamilla, 143 S.W.3d at 817 (citing Zuniga
v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004)).





[13] Johnson v.
State, 23 S.W.3d 1, 10-12 (Tex. Crim. App. 2000). 





[14] Id.  





[15]
Sims v. State, 90 S.W.3d 600, 603 (Tex. Crim.
App. 2003).





[16]
The standard of review
applicable to the denial of a motion for directed verdict is the same as that
applied in reviewing the legal sufficiency of the evidence.  Williams v. State, 937 S.W.2d 479, 482
(Tex. Crim. App. 1996); Havard v. State, 800 S.W.2d 195, 199 (Tex. Crim.
App. 1989).  We view all the evidence
presented during the guilt/innocence phase and if it is sufficient to support
the verdict, the trial court did not err in overruling the motion for directed
verdict.  Madden v. State, 799
S.W.2d 683, 686 (Tex. Crim. App. 1990).

 





[17]
See, e.g., Cooper v. State,
773 S.W.2d 749, 750 (Tex. App.BCorpus Christi 1989, no writ) (AA fist or hand is not a deadly
weapon per se, but it can become a deadly weapon in the manner used depending
on the evidence shown.@).





[18]
See United States v.
Mitchell, 166 F.3d
748, 753 (5th Cir. 1999).





[19]
See Tex. Pen. Code Ann. ' 17.01(a)(46) (Vernon Supp. 2005) (defining Aserious bodily injury@). 





[20]
See Tex. Pen. Code Ann. ' 17.01(a)(17)(B) (Vernon Supp. 2005) (defining Adeadly weapon@). 





[21]
See Escamilla, 143 S.W.3d at 817.





[22]
See Tex. R.
Evid. 403.





[23]
See Tex. R.
App. P. 33.1; Blue
v. State, 41
S.W.3d 129, 131 (Tex. Crim. App. 2000).





[24]
The witness answered Ayes@ to both questions.





[25]
See Tex. R.
App. P. 33.1; Blue, 41 S.W.3d at 131.





[26]
See Tex. R.
Evid. 902(1), (2).





[27]
An objection made at trial
must mirror the contention on appeal or the point of error will be waived. See
Santellan v. State, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997);  Doyle v. State, 24 S.W.3d 598, 602 (Tex.
App.BCorpus Christi 2000, pet. ref=d). 





[28]
See, e.g., Willis v. State, 785 S.W.2d 378, 383 (Tex. Crim.
App. 1989).





[29] See Fritz v. State, 946
S.W.2d 844, 846 (Tex. Crim. App. 1997). 





[30]
Bausley v. State, 997 S.W.2d 313, 315 (Tex. App.BDallas 1999, pet. ref'd).  





[31]
 Id.





[32]
 Id.





[33]
Simpson v. State, 119 S.W.3d 262, 268 (Tex. Crim.
App. 2003); Sparks v.State, 68 S.W.3d 6, 11 (Tex. App.BDallas 2001, pet. ref=d). 






[34]
Simpson, 119 S.W.3d at 268; Sparks,
68 S.W.3d at 11.  





[35]
Simpson, 119 S.W.3d at 268; Sparks,
68 S.W.3d at 11.  





[36]
Sparks, 68 S.W.3d at 11.  





[37] Simpson,
119 S.W.3d at 268; Sparks, 68 S.W.3d at 11.  





[38] Simpson,
119 S.W.3d at 268; Sparks, 68 S.W.3d at 11.  





[39]
Sparks, 68 S.W.3d at 11.  





[40]
Purkett v. Elem, 514 U.S. 765, 768 (1995).





[41]
Specifically, the State gave
the following reasons for striking the venire members:

 

Juror No. 9: Abecause he found not guilty in a
defrauding the government case@ and Aseemed responsive to the defense
counsel in the case.@

 

Juror No. 10: Athere had been an arrest for a DWI,
and something about there had been a criminal jury but they didn=t have a case.@

 

Juror No. 13: Awas a criminal juror in a rape case
and found not guilty.@

 

Juror No. 26: Aseemed rather wishy-washy in his
answers@ and said Ahe=d rather not be here.@

 

Juror No. 31: Ahad also worked for a criminal
attorney, and the State was worried about her legal expertise.@

 

Juror No. 32: Asaid that it really would be more
appropriate in family court versus in criminal court of an aggravated assault
when it=s a domestic dispute.@

 

Juror No. 33: Ahad been on a criminal jury. . . .
an assault case, and the person was found not guilty.@

 

Juror No. 40: Aknows [defense counsel]@ and Aalso raised a lot of concerns about
guns and knives being deadly weapons.@

Juror No. 45: Ahad had charges with a knife
brought against him.@

 

Juror No. 46: Ahad found not guilty on an assault
case with an inmate who was charging a jailer.@





[42]
See Simpson, 119 S.W.3d at 268.