COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRANDON TOM SIBLEY, | § | No. 08-07-00174-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court No. 8 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1009900) |
| | § | |

**O P I N I O N**

This is an appeal from a jury conviction for the offense of assault. The court assessed punishment at two years' community supervision and a probated fine of $1,000. We affirm.

## I. SUMMARY OF THE EVIDENCE

On January 22, 2006, Todd Ylen and his wife Sheri took their two young daughters shopping at a toy store in the Parks Mall in Arlington, Texas. As Ylen was turning his vehicle into the parking lot, he was struck by another vehicle on the passenger side of his car. Ylen parked his vehicle and got out of his truck. As he was checking on the well-being of his family, he noticed Appellant, the passenger of the other car, and his cousin, Greg Sibley, leave their vehicle and run towards Ylen's vehicle. Ylen went to the passenger side of his vehicle, and Appellant began shoving him. Greg Sibley then punched Ylen in the face. Appellant then tackled Ylen around the midsection. Ylen testified that Appellant and his cousin then dragged him to the ground. Appellant punched the victim several times in the upper shoulders and on the lower back. The altercation then moved into the street in the way of potential oncoming traffic. Ylen saw that his wife had gotten out of the vehicle.

He testified that after the fight, he had cuts on his face, a swollen eye, and pain in his ear, back and knees.

There were two eyewitnesses to the altercation. Todd Wright and Paul Hamilton both related that they did not see Ylen do anything to provoke the attack. Both witnesses testified that they saw Appellant and another person drag Ylen to the ground. They stated that they saw Appellant position himself in front of Ylen's wife to prevent her from aiding her husband. Both Wright and Hamilton testified that they saw Appellant throw the final punch. They saw that Ylen was bleeding from the left side of his face. Both witnesses testified that neither Appellant nor his companion appeared to be injured.

Officer Jake Hammer of the Arlington Police Department testified that he was dispatched to the scene of the accident. He spoke with Greg Sibley and Appellant. He observed that Appellant was not injured. Officer Hammer testified that Appellant told him that he had used his cell phone after, but not during, the altercation.

Greg Sibley testified on behalf of Appellant. He related that on January 22, 2006, he and his cousin, Appellant, were leaving the mall. A white truck turned in front of them, and the two vehicles collided. The truck turned into a side parking lot, and the driver, Todd Ylen, exited his vehicle. As Greg Sibley got out of the vehicle, he saw that Ylen was approaching them and yelling that he and Appellant were at fault for the accident. Sibley responded that Ylen was at fault.

Sibley stated that as Ylen and Sibley approached each other, the argument escalated to the point that Ylen shoved Sibley. When Sibley responded by pushing back, Ylen tried to punch Sibley. Sibley testified that he defended himself by punching Ylen twice; he then tried to remove himself from the altercation. He was not able to extricate himself because Ylen immediately charged Sibley, forcing him to again defend himself.

Sibley testified that during the course of these events, Appellant was not involved as he was talking on his cell phone with his mother. As the fight escalated, Appellant tried to break up the fight by pulling Sibley back and telling him to stop fighting. As Appellant got between the two combatants, Ylen swung and struck Appellant in the nose. Appellant struck Ylen in defense, and Ylen then charged Sibley and another altercation ensued.

Ylen's wife exited the vehicle and yelled at Appellant. Sibley testified that Appellant did not reenter the fight as he was still trying to break it up.

## II. DISCUSSION

In Issue No. One, Appellant asserts that the court erred in denying his *Batson*[1] challenge because the race-neutral explanation given by the State for striking an African-American venireperson was a pretext for discrimination, thereby violating Appellant's due process rights. The State responds that the record does not demonstrate that the State's facially neutral explanation for exercising its peremptory challenge was a pretext for discrimination.

At the close of voir dire, Appellant lodged a *Batson* challenge. Appellant's counsel objected that the State utilized a peremptory strike on juror number three, the only African-American woman on the panel, in a discriminatory manner in that Appellant is an African-American. The court found that juror number three was a specific member of an identifiable race, and that she was struck by the State. The court stated that it was then incumbent upon the State to offer an explanation why juror number three was struck. The prosecutor stated:

> The reason juror number 3 was struck is not because she was an African-American. She was struck because – for two reasons. For one, she has a family member who was charged with a crime.[2] Second of all, as I was watching her throughout Nate's

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).

[2] Juror number three, Ms. Echols, had a family member who was convicted of a drug-related offense.

voir dire and trying to make eye contact with her, she was making great eye contact with both of the Defense attorneys. She smiled at them. I couldn't get her to look at me. I didn't feel like I had her on my side. I struck other jurors for the same reason. And that's why I struck her.

Appellant sought to rebut this claim by stating that the prosecutor's reasons were "personal" and that the prosecutor did not strike other veniremembers with similar characteristics. The prosecutor then stated that she struck other jurors because of similar unfavorable body language, in particular juror number four. The prosecutor stated, "When I feel like I don't connect with a juror, I don't' feel like they're hearing me, that's when I strike." The court overruled Appellant's *Batson* challenge.

When reviewing a *Batson* challenge, an appellate court examines the record in the light most favorable to the trial court's ruling and reverses only when the ruling is clearly erroneous. *Herron v. State*, 86 S.W.3d 621, 630 (Tex.Crim.App. 2002); *Pondexter v. State*, 942 S.W.2d 577, 581 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 825 (1997); *Bausley v. State*, 997 S.W.2d 313, 315 (Tex.App.–Dallas 1999, pet. ref'd). A ruling is clearly erroneous when, after searching the record, an appellate court is left with the definite and firm conviction that the trial court has made a mistake. *Bausley*, 997 S.W.2d at 315. If the record, including the voir dire, the prosecutor's explanation of his peremptory challenges, appellant's rebuttal, and any impeaching evidence, supports the trial court's ruling, then the ruling is not clearly erroneous. *Id.*

To challenge the State's use of peremptory strikes under *Batson*, a defendant must first make a prima facie showing that the State exercised peremptory strikes on an impermissible basis. *Herron*, 86 S.W.3d at 630; *Bausley*, 997 S.W.2d at 316. Once the defendant makes a prima facie showing of purposeful discrimination, the State must provide a race- or gender-neutral explanation

for striking the prospective juror in question.[3]  *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324-25 (2005); *Herron*, 86 S.W.3d at 630; *Pondexter*, 942 S.W.2d at 581; *Bausley*, 997 S.W.2d at 316.  This step requires an explanation devoid of inherent discriminatory intent. *Bausley*, 997 S.W.2d at 316 (*citing Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771 (1995) (per curiam)).  An explanation is neutral in this context if the State bases it on something other than the prospective juror's race or gender. *See Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866 (1991).  Unless discriminatory intent is inherent, the courts will consider the explanation race- or gender-neutral. *See id.*  A juror's involvement with the criminal justice system, either personally or in connection with a family member, is a valid, neutral basis for exercising a peremptory challenge. *See Thornton v. State*, 925 S .W.2d 7, 11 (Tex.App.–Tyler 1994, pet. ref'd) (prospective juror related to people with criminal records); *Dorsey v. State*, 940 S.W.2d 169, 175 (Tex.App.–Dallas 1996, pet. ref'd) (prospective juror's family member convicted of crime). Furthermore, lack of eye contact and no development of a back and forth relationship can provide neutral reasons for exercising a peremptory strike. *See Anderson v. State,* 758 S.W.2d 676, 680 (Tex.App.–Fort Worth 1988, pet. ref'd).

If the State provides a race- or gender-neutral explanation for its strikes, the defendant may rebut the State's explanation or show that the explanation was merely a sham or pretext. *See Herron*, 86 S.W.3d at 630; *Pondexter*, 942 S.W.2d at 581; *Bausley*, 997 S.W.2d at 316.  To meet this burden, the defendant may call witnesses and introduce evidence, just as in any other evidentiary hearing. *Bausley*, 997 S.W.2d at 316.  The defendant has the ultimate burden of persuasion to establish the

---

[3] The first two steps of a *Batson* analysis, including the burden on the State to provide a neutral explanation for its strikes, involve solely a burden of production; the burden of persuasion, described in more detail below, remains at all times on the defendant. *Johnson v. California*, 545 U.S. 162, 171-72, 125 S.Ct. 2410, 2417-18 (2005); *Peetz v. State*, 180 S.W.3d 755, 759 (Tex.App.–Houston [14th Dist.] 2005, no pet.).

truth of his allegations of purposeful discrimination. *Id.* At this third step, the persuasiveness of the justification becomes relevant. *See Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771. Disparate treatment between jurors with similar attributes cannot automatically be imputed in every situation in which one of counsel's reasons for striking a prospective juror would technically apply to another juror who was not stricken. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 926 (1993). Even when disparate treatment of veniremembers with similar characteristics is shown, the record must reflect more than the mere fact that the objectionable characteristic of a stricken juror was also possessed by accepted jurors of a different racial background. *See id.* Different jurors may possess the same objectionable characteristics, but in differing degrees. *Id.* Such qualitative distinctions may cause a prosecutor to challenge one juror and not another. *Id.*

In the present case, Appellant raises the contention that the prosecutor's reasons for striking juror number three were a pretext for discrimination. Appellant cites *Whitsey v. State*, 796 S.W.2d 707, 713-14 (Tex.Crim.App. 1989) for the proposition that the following factors are utilized in evaluating whether the State's reasons for striking the juror are not actually supported by the record or are an impermissible pretext:

> 1. The reason given for the peremptory challenge is not related to the facts of the case;
> 2. there was a lack of questioning to the challenged juror or a lack of meaningful questions;
> 3. [d]isparate treatment-persons with the same or similar characteristics as the challenged juror were not struck;
> 4. [d]isparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
> 5. an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 713-14 (citing *Keeton v. State*, 749 S.W.2d 861, 866 (Tex. Crim. App. 1988)).

However, these objective factors do not control the analysis. These factors certainly may be

considered in evaluating the trial judge's overruling of a *Batson* claim, but they are not determinative. The overriding standard is still whether the trial judge's decision was supported by the record so that it is not clearly erroneous. *Vargas v. State,* 838 S.W.2d 552, 554 (Tex.Crim.App. 1992); *Johnson v. State,* 959 S.W.2d 284, 290-91 (Tex.App.–Dallas1997, pet. ref'd).

One way to rebut the prosecutor's race-neutral explanation is to establish disparate treatment of similar jurors, or to show that the reasons given do not relate to the facts of the case. *Cantu v. State*, 842 S.W.2d 667, 688 (Tex.Crim.App. 1992); *Williams v. State*, 804 S.W.2d 95, 105-06 (Tex.Crim.App. 1991). However, racial discrimination does not necessarily exist in every situation where one of the State's bases for striking a venire person would technically apply to another venire person whom the State found acceptable. *Lee v. State*, 949 S.W.2d 848, 850 (Tex.App.–Austin 1997, pet. ref'd). Nor must the characteristics a prosecutor finds offensive in a juror relate to the exact subject matter of the case. *Id*. at 851. When more than one reason for the strike is given, those reasons should be evaluated together, considering the interaction of the potential juror's characteristics. *Cantu*, 842 S.W.2d at 688.

Appellant points out that veniremembers Guerrero and Morgan were allowed on the jury and both had friends or family members with past criminal convictions. Guerrero had a nephew with a drug-related conviction and a close friend who was convicted of attempted murder. However, she also related that she had a friend who had been assaulted in a parking lot about two weeks prior to trial and there was a fairly extensive discussion between the prosecutor and Guerrero regarding what effect that incident had upon her regarding her general fairness as a juror. Veniremember Morgan stated that her brother was charged with a drug-related offense, but he never went to trial as he was deceased, and she indicated that she had no problem with the circumstances about her brother's case. Appellant also points out that veniremember Thompson had been convicted of driving while

intoxicated. However, the trial court pointed out that this was not a crime of moral turpitude and the lesser gravity of the offense could cause the prosecutor to give less weight to the offense.

The State also struck veniremember Eaves for lack of eye contact. Appellant contends that the peremptory challenge was not justified on that ground because that veniremember was openly hostile to the prosecution and veniremember Echols was open, honest, and pleasant to the State during voir dire. However, the record does not reveal whether or not such was the case. This is certainly one reason why we accord deference to the trial judge, who was present to view the voir dire proceedings, hear the examination of the prospective jurors, and assess the credibility of the State and its explanation. *See Cantu*, 842 S.W.2d at 689. We find that Appellant failed to rebut the State's race-neutral explanations and these explanations were clearly supported in the record so as not make the court's ruling clearly erroneous. Issue No. One is overruled.

In Issue No. Two, Appellant contends that the court erred in denying his oral motion for continuance. During trial, appellant made an oral motion for continuance in order to allow for the appearance of a cell phone company business records custodian. However, a motion for continuance during trial that is not in writing and is not sworn preserves nothing for review. *Dewberry v. State,* 4 S.W.3d 735, 755 (Tex.Crim.App. 1999); *Felan v. State,* 44 S.W.3d 249, 255 (Tex.App.–Fort Worth 2001, pet. ref'd). Accordingly, Issue No. Two is overruled.

In Issue No. Three, Appellant maintains that the court erred by refusing to allow Donna Sibley to testify about relevant information about which she had personal knowledge, and in denying her use of a writing to refresh her memory. The State counters by arguing that the court did not abuse its discretion in excluding the contested testimony and in prohibiting the witness from referring to a writing prior to testifying. Alternatively, if error occurred, the error should be disregarded as it did not affect a substantial right.

At trial, Appellant tried to refresh his mother's memory with the phone records about the exact time that she purportedly received a cell phone call from him during the altercation. On voir dire she related that she received a call from him about 6 p.m., but she could not remember the exact time. The court excluded her testimony on the grounds that the records being used to refresh her memory were hearsay and they were not available for inspection by the opposing party. An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). If the trial court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb its ruling. *Id.*

TEX.R.EVID. 612(1) & (3) allows a witness to use a writing to refresh his or her memory either before or during their testimony. The rule requires that the witness must actually have a memory of the event which is to be refreshed. The writing itself cannot be the basis of the memory. *See United States v. Faulkner,* 538 F.2d 724, 727 (6th Cir. 1976). There is no predicate for the admissibility of the writing. *Callahan v. State,* 937 S.W.2d 553, 559 (Tex.App.–Texarkana 1996, no pet.). Here, the witness clearly had some memory of the event. As such, the court erred in not allowing the witness to refresh her memory.

However, we find that the error is non-constitutional harmless error because the exclusion of the testimony about the time of the call did not preclude Appellant's defense. *See Potier v. State,* 68 S.W.3d 657, 665 (Tex.Crim.App. 2002). Here, the record indicates that the witness was prepared to testify that her son called her when the accident occurred. Appellant stated that he had decided not to put her on the stand. The record does not reveal that the precise time of the call would have matched any pertinent evidence concerning his involvement in the altercation. There were numerous witnesses who testified that Appellant was part of the affray apart from merely defending himself.

Accordingly, Issue No. Three is overruled.

### III.  CONCLUSION

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

August 12, 2009

Before McClure, J., and Rivera, J., and Hill, C.J. (Ret.)
Hill, C.J. (Ret.), sitting by assignment

(Do Not Publish)