AFFIRMED; Opinion Filed January 30, 2013.



In The

Court of Appeals

Fifth District of Texas at Dallas

---

No. 05-10-01651-CR

---

DUANE LENARD BRYANT, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 283rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F03-32686-T

---

## OPINION

Before Justices FitzGerald, Fillmore and Evans
Opinion by Justice Evans

Duane Lenard Bryant was convicted by a jury of theft. His sole issue on appeal is whether the trial court erred in overruling his *Batson*[1] challenge to one of the State's peremptory strikes during voir dire. We conclude the trial court did not err and affirm the trial court's judgment.

### FACTS

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, we will confine our factual recitation to the pertinent evidence adduced in the voir dire hearing. At the conclusion of the hearing, the State moved to exercise peremptory strikes

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

against venireperson six, Quilla Davis, among others. The record shows that both appellant and Davis are African American. Appellant objected on the basis of *Batson* with regard to the strike of Davis and three other venirepersons. At that point, the trial judge instructed the prosecutor to explain the State's reasons for the strikes.

The prosecutor explained that Davis had been struck for several reasons. Davis had indicated on her juror questionnaire that she felt the criminal justice system was unjust. She had also neglected to answer questions six and ten of the questionnaire, which pertained to the first thing the prospective juror thought of when considering police officers, prosecutors, defense attorneys, and defendants and what the prospective juror thought the objective of punishment should be. The prosecutor explained that the State, based solely on the venirepersons' answers to the juror questionnaire, had rated the venirepersons on a scale of one to five, with one being the worst score the venireperson could receive as a prospective State's juror. Davis had scored one out of five. The questionnaires did not indicate the race, age, or gender of the venirepersons.

In addition, the prosecutor noted that when the trial judge read the indictment aloud, Davis "rolled her eyes big and rolled her eyes in disgust." The prosecutor had noted Davis's affect on the State's voir dire seating chart. The prosecutor also related that when the venirepersons had been questioned about whether anyone close to them had been accused of theft, Davis had said her son had been accused of theft and had not been treated fairly by the criminal justice system. The reporter's record, however, shows that Davis mentioned the theft accusation against her son but did not specify that he had been involved in the criminal justice system. She stated, "Well, he didn't go to trial or court or anything but I don't think . . . he was treated fairly." Finally, the prosecutor noted that interns for the State who were present for voir

dire had considered Davis the top candidate for a peremptory strike by the State, but she did not explain the interns' reasons for their opinions.

When asked by the trial judge whether the State had failed to strike non-African American venirepersons who had similarly indicated that a person close to them had been treated unfairly by the criminal justice system, the prosecutor admitted she could not immediately answer without examining her seating chart and notes. The judge then asked why venireperson thirty-one, Pamela Scoggins had not been struck by the State. Scoggins had indicated on her questionnaire that the criminal justice system "moves too slowly; criminals go free, and the innocent are often punished." The prosecutor explained that she interpreted the statement to be more of an expression of Scoggins's frustration that criminals go free and victims "get screwed" than an expression that the system is unjust. The prosecutor added that Scoggins had none of the other troubling qualities the State perceived in Davis.

The defense did not attempt to refute the State's explanations for the strike of Davis in any way. The trial court sustained appellant's *Batson* objection to the strike of venireperson twenty-three, Martha Skinner, but overruled the objection as it pertained to Davis and two other venirepersons. Afterward, the prosecutor noted for the record that "the current make-up of the jury is seven minorities, five non-minorities, five of which appear to be African American, one Asian and one Hispanic." Neither the trial court nor the defense disputed this assertion.

## ANALYSIS

In his sole issue, appellant contends the trial court erred in overruling his *Batson* objection to the State's peremptory strike of Davis. The following three-step process applies to a *Batson* challenge: (1) the defendant must make a prima facie showing the prosecutor exercised peremptory strikes on the basis of race, (2) the burden then shifts to the prosecutor to state a race-neutral reason for the strikes, and (3) the trial court must decide whether the defendant has

3

proved purposeful racial discrimination. *See Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010). When reviewing a *Batson* objection, we examine the record in the light most favorable to the trial court's ruling and reverse only when the ruling is clearly erroneous. *See Bausley v. State*, 997 S.W.2d 313, 315 (Tex. App.–Dallas 1999, pet. ref'd). A prosecutor's reasoning for a peremptory strike does not necessarily need to be factually correct to be deemed race neutral. *See Grant*, 325 S.W.3d at 660. We give great deference to the trial court's decision on the issue of purposeful discrimination because it requires an assessment of the credibility and content of the prosecutor's reasons and all other relevant facts and circumstances. *Alexander v. State*, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993).

Appellant argues that the record shows the trial court erred in denying his *Batson* objection because seventy percent of the State's peremptory strikes were used to strike members of minority groups from the jury panel, forty percent of its strikes were used to strike African American venirepersons, and the State's explanations for striking Davis were pretextual at best, tending to prove purposeful discrimination "consistent with the Dallas District Attorney's Office history of excluding African Americans from criminal juries." The defendant carries the burden of proving racial discrimination. *See Mathis v. State*, 67 S.W.3d 918, 924 (Tex. Crim. App. 2002).

The record before us fails to reveal the overall racial makeup of the venire panel, so it is impossible to determine whether the State used a disproportionate number of its peremptory strikes to remove racial minorities from the jury. Excluding the reference to the interns' choice for peremptory strikes, the State offered five different race-neutral justifications for striking Davis. The defense did not challenge or contradict even one of these justifications.

After thoroughly examining the record, we cannot find a single other venireperson who presented the five difficulties the State found in Davis. Only two other venirepersons arguably presented three of the deficiencies found in Davis, and both of those jurors were struck for cause. In both cases, the venirepersons had received a State's rating of one based on the juror questionnaire and both had a family member who had been accused of a crime who they felt had not been treated fairly.

Only three of those venirepersons eventually seated as jurors possessed arguably two of Davis's shortcomings. One was venireperson Skinner, about whom the trial court had sustained appellant's *Batson* objection; one was African American; and one appeared to be Asian. All three had indicated in some way they had family members who had been accused of a crime who they felt had not been treated fairly. But (unlike Davis) the two jurors the State failed to strike had received questionnaire ratings of three by the State, despite one venireperson's failure to answer to questions six and ten and the other venireperson's remark that the criminal justice system was "not always just."

Appellant never demonstrated on the record how Davis's uncontroverted eye rolling, her questionnaire answers and refusals to answer, and her family history were—in combination—a pretext for racial discrimination. The trial court was able to observe the venire panel and the attorneys in concluding there was no *Batson* error in the strike of Davis. Deferring to its credibility assessment, we conclude the court's ruling was not clearly erroneous.

5

We resolve appellant's sole issue against him.  We affirm the trial court's judgment.

_____
DAVID W. EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
101651F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

Duane Lenard Bryant, Appellant

No. 05-10-01651-CR      V.

The State of Texas, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F03-32686-T.
Opinion delivered by Justice Evans,
Justices FitzGerald and Fillmore
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of January, 2013.


DAVID W. EVANS
JUSTICE