Timothy Michael SCHOENBAUER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 12–01–00309–CR.

Court of Appeals of Texas,
Tyler.

Aug. 14, 2002.

Eugene X. Martin III, Jeanine L. Howard, Dallas, for appellant.

William T. Hill, Dallas, for state.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

LOUIS B. GOHMERT, JR., Chief Justice.

Timothy Schoenbauer ("Appellant") was convicted for misdemeanor assault. The trial court made an affirmative finding of family violence and sentenced Appellant to confinement for one hundred twenty days, but probated Appellant's sentence for one year. Appellant raises one issue on appeal. We affirm.

## BACKGROUND

Michelle Matthews ("Matthews") filed a complaint against Appellant alleging that at 8:40 PM on December 10, 2000, she went to Appellant's house, which the two had at one time shared, to retrieve some of her daughter's belongings. Matthews further alleged that, as she entered the house, Appellant kicked her in the buttocks, causing injuries for which she later received medical treatment. Appellant testified in his defense and denied ever kicking Matthews in the buttocks. Melinda Minyard ("Minyard") testified that Matthews told her the assault occurred on November 26, 2000. Upon the close of evidence, the trial court found Appellant guilty as charged and sentenced him to confinement for one hundred twenty days, but probated Appellant's sentence for one year. Appellant subsequently filed a motion for new trial alleging that his trial counsel was ineffective in failing to properly investigate Appellant's whereabouts on or about the date of the offense as alleged in the information, and that such failure denied Appellant the opportunity to present an alibi defense at trial.

In support of his motion, Appellant presented the affidavit testimony of John Robert Shepherd ("Shepherd"), Michael Siddle ("Siddle"), Todd Dimitry ("Dimitry"), and A.J. Ehrle ("Ehrle"), Appellant's trial attorney. According to Shepherd's affidavit, Shepherd and his wife, who were visiting from Houston, spent the night of December 9, 2000 at Appellant's home in Dallas. The next morning, December 10, 2000, Shepherd, his wife and Appellant ate breakfast together, after which Appellant left to meet a friend. Shepherd and his wife next saw Appellant at 5:00 PM that afternoon at Siddle's house, where they watched sports on television and socialized until 11:30 PM. Shepherd and his wife then followed Appellant to his house, where the three arrived at 12:00 AM. Shepherd and his wife again spent the night at Appellant's house. The three ate breakfast together the next morning, December 11, 2000. Shepherd and his wife departed for Houston at 10:30 AM that same day. At the hearing on Appellant's motion for new trial, Shepherd testified that Appellant joined Shepherd and his wife in Houston between 4:00 PM and 5:00 PM on December 11, 2000, spent the night with them, and departed the next morning. Siddle corroborated Shepherd's testimony that Appellant was at his house from 5:00 PM until 11:30 PM on December 10, 2000. Dimitry, in his affidavit, testified that he met Appellant at the TNT Sports Page in Dallas, on December 10, 2000 at 12:00 PM, where the two watched football on television until Appellant left at 4:30 PM. Both Shepherd and Siddle stated in their affidavits that they were available and willing to testify at Appellant's trial, but were not contacted by Appellant's attorney.

In his affidavit, Ehrle indicated that he failed to investigate Appellant's whereabouts on both December 10 and 11, 2000 and did not believe he informed Appellant of the alleged date of the offense. Ehrle stated that had he questioned available witnesses, he could have established an alibi for Appellant on the date and time of the alleged offense. Ehrle offered no excuse for his inaction other than his statement that he made a mistake. Ehrle concluded by describing his legal representation of Appellant as deficient.

An evidentiary hearing was held on Appellant's motion for new trial on September 14, 2001. Appellant, Shepherd and Siddle each testified at the hearing. At the conclusion of the hearing, the trial court overruled Appellant's motion and this appeal followed.

### Motion For New Trial Related
### To Ineffective Assistance
### of Counsel

■ Although Appellant does not frame it as such, his argument asserting ineffective assistance of counsel is, in effect, a challenge to the denial of his motion for new trial. Such is the case because the new trial proceeding is where the issue was first presented to and ruled upon by the trial court and because Appellant otherwise lacked a sufficient record to present such a challenge for the first time on appeal. See Tex.R.App. P. 21.2 (a motion for new trial is a prerequisite to presenting a point of error on appeal where it is necessary to adduce facts not in the record). A trial court's ruling denying a defendant's motion for new trial is reviewed for abuse of discretion. See Salazar v. State, 38 S.W.3d 141, 148 (Tex.Crim.App.2001). When the appellant has presented evidence on his counsel's alleged ineffectiveness at a hearing on a motion for new trial, we review the application of the test pronounced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), through the prism of an abuse of discretion standard. See State v. Gill, 967 S.W.2d 540, 542 (Tex.App.Austin 1998, pet. ref'd). In considering a motion for new trial, the trial court possesses broad discretion in assessing credibility of witnesses and in weighing the evidence to determine if a different result would occur upon retrial. See Lewis v. State, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). We must determine whether the trial court's application of Strickland and its subsequent decision to deny the motion for new trial were so outside the zone of reasonable disagreement that they are subject to reversal. See State v. Kelley, 20 S.W.3d 147, 151 (Tex.App.Texarkana 2000, no pet.).

When we look to the general standards established for effective assistance of counsel in criminal cases, we see that Appellant must meet the two-pronged test articulated in Strickland. According to Strickland, to show that his trial counsel was ineffective, a defendant must demonstrate that counsel's performance was deficient. Of particular consequence in the case at bar is the second prong that requires Appellant to show that counsel's performance prejudiced his defense at trial. Strickland, 466 U.S. at 692, 104 S.Ct. at 2067. "It is not enough for the Appellant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693, 104 S.Ct. at 2067. Rather, he must show there is a reasonable probability that the result of the proceeding would have been different but for the errors made by counsel. Id. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

■ It is apparent that Appellant's trial attorney used a strategy of attacking the veracity of Matthews's testimony, focusing on the date of her allegations. Our analysis of the record shows such an effective cross-examination of Matthews, as well as counsel's introduction of Appellant's testimony, that the date of the alleged kicking is not determined with any specificity. The questions raised by Appellant's attorney were so effective that we are left to wonder, as the fact-finder likely was, whether the assault occurred on November 26, or any date thereafter up to twelve days prior to her January 13, 2001 doctor's appointment.

The strength of Officer Blanco's testimony regarding the date of the alleged incident was also in question. In fact, Blanco testified that the only basis for his testimony that the date of the assault was December 10, the supposed day before he took Matthews's statement, was a review of the report, which was dated January 5, 2001,

and a call he placed to "staff review," wherein an unnamed person indicated that Matthews's statement was taken on December 11, 2000. Otherwise, Blanco appeared to have no independent recollection of when the statement was taken or when the incident in question occurred.

Matthews herself was clearly not certain as to the date of the incident, especially after counsel for Appellant finished his rigorous cross-examination, the substance of which is as follows:

. . . .

Q. Now this happened, allegedly happened approximately December 10th?

A. Uh-huh.

Q. And you are testifying now which was I believe you said a Monday and it was approximately 10 days before you went to the doctor; is that correct? Is that your testimony?

A. Without having my records—I have my medical records I can look at and give you the exact dates, but from memory it's been several months, so I would have to look at my papers.

MR. EHRLE: I'm going to ask the Court if I can have Plaintiff Exhibit 1 for a moment please?

BY MR. EHRLE: Q. Now your testimony is that you went to the doctor approximately 10 days after this happened; is that correct?

A. Well I went on a Saturday. It happened [on] a Monday. So that's Tuesday, Wednesday, Thursday, Friday, Saturday. That would have been—and I don't remember if I went that first week—that would have been five days.

Q. So it would have been five to 12 days?

A. Right. I think so.

Q. So it should have been somewhere within the vicinity of December 15th to December 22nd; is that correct?

A. I suppose so. I mean I've got the same records you do. I could look at the date and tell you.

. . . .

Q. Would you be kind enough to do that for me and show me which dates you did go to the doctor? What is the date on that page that you are looking at right there, please?

. . . .

A. That one is January 13th.

Q. That's not—may I have it back, please?

A. Uh-huh.

Q. That's not December 15th or December 27th?

A. There may be a page missing. I don't know.

Q. Well now did you—this is entered from your doctor that—the custodian of the records only had two pages of reports. So these are the only records that this doctor kept. Are you telling us that your doctor's records are inaccurate?

A. No. Actually I'm not. I have my file and I could look through that and see because there are several different pages.

Q. But your records are more accurate than your doctor['s]?

A. No, they are not. I'm just saying that I don't know if that's all the paperwork. It may very well be.

THE COURT: Well, ma'am, did you [sic] to the doctor on January the 13th?

THE WITNESS: Yes, ma'am, I did. And there was still bruising at that time also noted on there.

MR EHRLE: Judge, we would ask you to take judicial notice that, first of all, December 10th was on Sunday. The following Saturday would have been December 16th, and the Saturday after

that would have been December 23rd. I have a calendar if the Court would like to observe that.

THE COURT: I will take judicial notice. I have a calendar up here.

MR EHRLE: Thank you, Your Honor.

BY MR. EHRLE: Q. So the first time you went to the doctor was actually January 13th?

A. That could be possible.

Q. Now that would have been from December—

A. Is that on a Saturday?

Q. January 13th is on a Saturday.

A. Okay. Well then, that is very possible.

Moreover, defense witness Minyard testified that the victim had told her a date other than December 10 or 11, 2000. Minyard testified that Matthews told her the assault occurred on the date of the "move" from Appellant's home, which she testified was November 26, 2000.

In support of his motion for new trial, Appellant provided affidavit testimony from multiple alibi witnesses. Such testimony would have proven beneficial to Appellant as it would have accounted for his whereabouts for both December 10 and 11, 2000. Moreover, two of these witnesses testified that they were available to testify on the date of Appellant's trial. As such, the evidence presented in support of Appellant's motion for new trial satisfies the first prong of *Strickland. See Ex parte Ybarra,* 629 S.W.2d 943, 946 (Tex.Crim. App.1982); *Peters v. State,* 652 S.W.2d 460, 463 (Tex.App.Houston [1st Dist.] 1983, pet. ref'd); *see also Butler v. State,* 716 S.W.2d 48, 55 (Tex.Crim.App.1986); *King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App.1983).

However, turning to the second prong of the *Strickland* test, we note that an effective defense strategy often involves attacking the credibility of witnesses for the State of Texas ("State"), especially any alleged victim. In the present case, the defense attorney's attack of the State's witnesses was forceful and effective in establishing that the date of the assault was a date other than December 10 or 11, 2000. The success of the Appellant's trial attorney was such that we cannot now say that Appellant was prejudiced by the purported failure to investigate and bring evidence of alibi for the dates of December 10 or 11, as the record likewise supports that the incident may have taken place any time from November 26, 2000 to January 1, 2001.

It also appears from the record that Appellant's attorney was effective in attacking the victim's testimony regarding not only the date, but also the extent of the victim's injuries. The credibility of the victim's testimony was successfully questioned to the point that the State's attorney backed away from arguing an offense date of December 10 or 11 and was not arguing that the injuries were as serious as the victim had indicated:

. . . .

MS. GORUP: **And Ms. Mathews told you to the best of her recollection. She wasn't sitting there adamantly saying, It was this date. It was this date ...** I submit to you that this did **happen on or about whatever day the move was. It did happen, whatever day he kicked her ...** I submit to you the State has proven this case beyond a reasonable doubt. The extent of her injuries or how long she had pain from those injuries is not relevant. **It's just whether it happened and whether it caused her pain.** I submit to you that Mr. Schoenbauer did kick Ms. Mathews and assaulted her causing her pain and we ask you to find him guilty. Thank you. (Emphasis added).

From the verdict by the trier of fact, it is apparent that the trial court was in agreement with the State's closing request not to get bogged down over the issue of the date or the seriousness of the injury: "It's just whether it happened and whether it caused her pain."

The law is settled that when a charging instrument alleges that an offense occurred "on or about" a certain date, the State is not required to prove that the offense occurred on the specific date alleged but only that the offense occurred prior to the presentment of the charging instrument and within the limitations period. *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997).

As a result, Appellant has failed to show that there is a reasonable probability that the result of the proceeding would have been different but for the alleged error made by counsel. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, we overrule Appellant's sole issue and *affirm* the judgment of the trial court.