**Affirmed and Opinion Filed February 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-11-01590-CR

---

# EDGAR MANUEL CISNEROS, Appellant
## V.
# THE STATE OF TEXAS, Appellee

---

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-82276-2010**

---

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Lang

Edgar Manuel Cisneros appeals the trial court's judgments convicting him of continuous sexual abuse of a young child and aggravated sexual assault of a child younger than fourteen years of age. The jury found Cisneros guilty and assessed his punishment at imprisonment for life for each offense. Cisneros raises four issues on appeal, arguing: (1) the trial court erred when it denied his motion for new trial because he received ineffective assistance of counsel; (2) the evidence is insufficient to support his conviction for continuous sexual abuse of a young child; (3) the evidence is insufficient to support his conviction for aggravated sexual assault of a child younger than fourteen years of age; and (4) the trial court erred when it overruled his *Batson* objection during voir dire.

We conclude the trial court did not err when it denied Cisneros's motion for new trial because he did not meet his burden to show that his trial counsel was ineffective. Also, we conclude the evidence is sufficient to support Cisneros's convictions. Finally, we conclude the trial court did not err when it overruled Cisneros's *Batson* objection. The trial court's judgments are affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When E.M. was nine or ten years of age, Cisneros, her father, began biting her breasts when they played together. After E.M. told her mother about this, Cisneros stopped that particular conduct. Instead, Cisneros started lying in bed with E.M., put his hands beneath her shirt, and touched her breasts. Then, when E.M. was around eleven years of age, Cisneros started licking the "inside of [E.M.'s] butt and put his penis in there sometimes." This happened often and continued until E.M. was fourteen. Also, Cisneros would have E.M. and her siblings play hide and seek. While the other children were hiding, Cisneros would tie a T-shirt or towel over E.M.'s eyes and tell her she had to "lick the peanut butter off [of] his finger." However, on one occasion, E.M. saw that it was actually "his private part" and stated that, even when she could not see, she did not believe it was his finger because it "would be really small at first and soft, and then it would get really hard to fit in [her] mouth." E.M.'s parents separated, but she continued to visit Cisneros. After Cisneros left the family residence, he licked E.M.'s anus only one time.

E.M. told a close family friend that Cisneros was constantly asking her to send him inappropriate photos of herself on the phone. Also, E.M. told the friend about the "peanut butter" activities. That friend immediately called E.M.'s mother and the police.

2

Cisneros was indicted for continuous sexual abuse of a young child and aggravated sexual assault of a child younger than fourteen years of age. The jury convicted Cisneros of both offenses and assessed his punishment at imprisonment for life for each offense. Cisneros filed a motion for new trial, arguing he received ineffective assistance of counsel. After a hearing where Cisneros's trial counsel testified, the trial court denied his motion for a new trial.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In issue one, Cisneros argues the trial court erred when it denied his motion for new trial because he received ineffective assistance of counsel. He claims that his trial counsel was ineffective because he failed to call any witnesses to testify on his behalf during both the guilt and innocence, and punishment phases of his trial. Also, Cisneros argues that his trial counsel failed to request a continuance in order to secure witnesses to testify during the punishment phase of his trial. Further, Cisneros argues his trial counsel was ineffective because he failed to request a presentence investigation. The State responds that Cisneros fails to identify the witnesses that should have been called, the nature of their testimony, and whether they would have been available to testify. Also, the State contends that Cisneros's trial counsel fully investigated the case and interviewed all potential witnesses, so Cisneros is merely second-guessing his trial counsel's strategic decisions.

### A. Standard of Review

When an appellant presents his ineffective assistance claim to the trial court in a motion for new trial, an appellate court analyzes his ineffective assistance of counsel issue as a challenge to the denial of his motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding appropriate standard of review for ineffective assistance claim brought forth in motion for new trial is abuse of discretion), *superseded by statute on other grounds as stated*

3

*in Herndon v. State*, 215 S.W.3d 901 (Tex. Crim. App. 2001); *see also Sanchez v. State*, 243 S.W.3d 57, 63 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Schoenbauer v. State*, 85 S.W.3d 400, 402 (Tex. App.—Tyler 2002, no pet.). In such circumstances, an appellate court reviews the *Strickland* test through an abuse of discretion standard. *Charles*, 146 S.W.3d at 208. An appellate court must decide whether the trial court's resolution of the ineffective assistance of counsel claim and the denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *See Sanchez*, 243 S.W.3d at 63. An appellate court will reverse only if the trial court's decision was arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling. *Biagas v. State*, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

### B. Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). To satisfy the first part of the test, the defendant must overcome a strong presumption that counsel's performance fell within the wide range of reasonable, professional assistance and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The reasonableness of counsel's performance is judged under prevailing professional norms. *Strickland*, 466 U.S. at 688. An appellate court's review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813. Under the second part of the test, a

4

reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Andrews*, 159 S.W.3d at 101; *Thompson*, 9 S.W.3d at 813. A claim for ineffective assistance of counsel may not be predicated on a failure to call witnesses unless the defendant shows such witnesses were available and their testimony would benefit him. *Ex parte Flores*, No. AP-76,862, 2012 WL 6027333, at *7 n.54 (Tex. Crim. App. Dec. 5, 2012); *King v. State*, 649 S.W.2d 42 (Tex. Crim. App. 1983); *Brennan v. State*, 334 S.W.3d 64, 79 (Tex. App—Dallas 2009, no pet.).

Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813. Ineffective assistance of counsel claims must be firmly founded in the record and not based on retrospective speculation. *See Bone*, 77 S.W.3d at 835.

### C. Application of the Law to the Facts

During the hearing on Cisneros's motion for new trial, his trial counsel testified. Trial counsel recounted his attempts to contact the witnesses he thought were important for his trial preparation, but he "was not able to find any favorable witnesses." During the hearing, Katrina, Cisneros's girlfriend, was specifically identified as a potential witness. However, trial counsel stated that he interviewed Katrina "[a]nd she could have testified about some matters that probably weren't that helpful, but she did not want to testify." Trial counsel also stated that he spoke to everyone who could have testified and "they kept coming up a dry hole." According to trial counsel, there was some suggestion "[E.M. and her sister] related to Roger [Cisneros's brother] . . . they did not want to testify or that they didn't want to see [Cisneros] go to prison for

5

a long time." However, that information turned out not to be true. Similarly, at Cisneros's suggestion, trial counsel spoke with Luis, Cisneros's nephew, regarding the possibility that E.M. had talked with Luis and recanted. However, Luis denied the conversation had occurred. Cisneros has not identified any other witnesses he believes should have been called by his trial counsel to testify.

As to the presentence investigation, trial counsel stated that, at the time, he did not believe requesting a presentence investigation would have benefitted Cisneros. Cisneros offered no specific reasons why such an investigation would have been beneficial or even admissible before the jury if requested, or why trial counsel's judgment was deficient.

Finally, as to whether a continuance should have been sought to seek witnesses, trial counsel stated he did not believe there was a valid reason for seeking a continuance of the trial date because he had completed the necessary preparation for trial. We conclude that Cisneros has not shown that his trial counsel's performance fell below an objective standard of reasonableness.

Even if trial counsel's performance were determined to fall below an objective standard of reasonableness, Cisneros must show a reasonable probability exists that, but for trial counsel's errors, the result would have been different. In his brief, Cisneros states that

> Even if [Cisneros] did not desire to ask for leniency or at least not a Life [sic] sentence, typically family members or friends are asked to speak on behalf of [the defendant]. Furthermore, it is not only the words of these witnesses that may alter a case such as this from a sentence of Life [sic] to something much less, but just having even one witness appear and testify for you at least shows the 12-member jury that one person in this world cares about the future of your life. [Cisneros] received the maximum sentence for each Count; simply put, [Cisneros] could not have been sentenced to any worse. Therefore, it would not be a stretch to suggest that one witness or many witnesses could have spared two Life [sic] sentences. Prejudice in this regard appears to be certain.

Cisneros appears to argue that since he received "the maximum sentence for each count," he was necessarily harmed by counsel's failure to act as alleged. We cannot agree. Cisneros does not specify the witnesses that should have been called and what those witnesses would have said. Further, he does not demonstrate how a continuance would have allowed witnesses to be found. Nor does he demonstrate how a presentence investigation would have been admissible. We conclude that Cisneros has not demonstrated that, but for trial counsel's errors, the result would have been different.

Accordingly, we conclude the trial court did not err when it denied Cisneros's motion for new trial because Cisneros has not shown that he received ineffective assistance of counsel. Cisneros's first issue is decided against him.

## III. SUFFICIENCY OF THE EVIDENCE

In issues two and three, Cisneros argues the evidence is insufficient to support his convictions.

### A. Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318–19 (1979); Merritt v. State, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); Brooks v. State, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Appellate courts are required to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 902 n.19. An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.

7

*See Jackson*, 443 U.S. at 319, 326; *Merritt*, 368 S.W.3d at 525; *Brooks*, 323 S.W.3d at 899. All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

### B. Continuous Sexual Abuse of a Child

In issue two, Cisneros argues the evidence is insufficient to support his conviction for continuous sexual abuse of a young child. He claims the State failed to prove that he committed two or more acts of sexual abuse during a period that was more than thirty days in duration and while the victim was a child younger than fourteen years of age. The State responds that E.M.'s diary established one date for some of the sexual abuse and the jury could infer the dates of the other abuse because E.M. testified Cisneros sexually abused her "often" during a four-year period, which included the relevant time frame.

### 1. Applicable Law

Texas's continuous sexual abuse statute was enacted as a response to concerns that prior law did not easily "accommodate the prosecution of generic, undifferentiated, ongoing acts of sexual abuse of children" involving the "common factual scenario of an ongoing crime involving an abusive sexual relationship of a child." *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring); *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App—Texarkana 2010, no pet.). A person commits the offense of continuous sexual abuse of a young child if, during a period that is thirty or more days in duration, the person commits two or more acts of sexual abuse, and at the time of the commission of each act of sexual abuse, the victim is a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012); *see*

8

*Render v. State*, 316 S.W.3d 846, 856 (Tex. App—Dallas 2010, pet. ref'd). The members of a jury are not required to agree unanimously on which specific acts of sexual abuse were committed or the exact date when those acts were committed. TEX. PENAL CODE ANN. § 21.02(d); *Render*, 316 S.W.3d at 856.

## 2. Application of the Law to the Facts

The continuous sexual abuse of a young child statute became effective on September 1, 2007. TEX. PENAL CODE ANN. § 21.02. It also requires that the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(a). As a result, the State was required to prove the sexual abuse of E.M. occurred between September 1, 2007 and July 25, 2009, or when E.M. was at least twelve years, thirty-seven days old and before her fourteenth birthday. The record shows that E.M. testified that when she was "from 11 to 14" Cisneros would put her face-down on the bed, put a pillow over her head, pull down her pants and "lick inside [her] butt and put his penis in there sometimes." She stated that this happened "often." Also, E.M. stated that a "couple of times" or "three or four times" when she was "11 to 13" Cisneros would have her and her siblings play hide and seek. While the other children were hiding, Cisneros would tie a T-shirt or towel over her eyes and tell her she had to "lick the peanut butter off [of] his finger." However, on one occasion, E.M. saw that it was actually his private part and stated that, even when she could not see, she did not believe it was his finger because it "would be really small at first and soft, and then it would get really hard to fit in [her] mouth." Further, E.M. stated that her parents separated when she was in the "10th grade" and one time after they separated, Cisneros put his "tongue on her butt or penis in her butt." E.M. stated that the instances of sexual abuse occurred while she was living at the Mission apartments. In addition, E.M. testified that she received a diary around July 1, 2008, and in the middle of that diary on approximately

9

six or seven pages she wrote about the things Cisneros did to her. Cisneros found the diary and took it away from E.M. Then, in August 2008, E.M. found the diary on her desk with those pages removed.

Although E.M. did not give the specific dates when the instances of sexual abuse to which she referred took place, she was able to state that they occurred during a period when she was eleven to fourteen years of age, the grade she was in at school, and where they took place. *See Michell*, 381 S.W.3d at 561. She also stated that the abuse occurred "often." We conclude a rational jury could have found that two or more acts of sexual abuse occurred after E.M. was twelve years, thirty-seven days old and before she turned fourteen years of age. Accordingly, we conclude the evidence is sufficient to support Cisneros's conviction for continuous sexual abuse of a young child.

Issue two is decided against Cisneros.

### C. Aggravated Sexual Assault of a Child

In issue three, Cisneros argues the evidence is insufficient to support his conviction for aggravated sexual assault of a child younger than fourteen years of age. He claims the State's evidence fails to prove that he sexually assaulted E.M. before she was fourteen years of age. The State responds that the evidence is sufficient because E.M. testified Cisneros sexually assaulted her over a four-year period beginning when she was eleven years old.

### 1. Applicable Law

Section 22.021 of the Texas Penal Code provides that a person commits an offense if the person intentionally or knowingly causes the anus of a child to contact the sexual organ of another person, including the actor, and the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv), (a)(2)(B) (West Supp. 2012). When an indictment

10

alleges an offense occurred "on or about" a particular date, the State is not bound by the date alleged, and may prove any offense of the character alleged, within the period covered by the applicable statute of limitations. *See Ex parte Goodman*, 152 S.W.3d 67, 71 (Tex. Crim. App. 2004); *Garcia v. State*, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). The date in the indictment is intended to show the prosecution is not barred by the statute of limitations and to provide the defendant with sufficient notice to prepare an adequate defense. *See Garcia*, 981 S.W.2d at 686.

### 2. Application of the Law to the Facts

The indictment alleged that "on or about the 16[th] day of July, 2008" Cisneros intentionally or knowingly caused the anus of E.M., a child younger than fourteen years of age to contact the male sexual organ of Cisneros. The record shows that E.M. testified Cisneros began anally abusing her when she was eleven years of age or approximately 2006 and that the anal abuse occurred "often." As a result, the record shows that the offense occurred within the statute of limitations and before the presentment of the indictment. *See Garcia*, 981 S.W.2d at 686. Accordingly, we conclude the evidence is sufficient to support Cisneros's conviction for aggravated sexual assault of a child younger than fourteen years of age.

Issue three is decided against Cisneros.

### IV. PEREMPTORY CHALLENGES TO THE JURY PANEL

In issue four, Cisneros argues the trial court erred when it overruled his *Batson* objection during voir dire. He claims the State failed to offer a race-neutral reason for using its peremptory strike against venire-member Rios. The State responds that it provided a race-neutral reason for striking the venire member, the trial court determined the reason was not pretextual, and

Cisneros offers no evidence of disparate questioning, strikes, or any other reason to contradict the trial court's determination.

## A. Standard of Review

When reviewing a *Batson* challenge, an appellate court examines the record in the light most favorable to the trial court's ruling and reverses only when the ruling is clearly erroneous. *Herron v. State*, 86 S.W.3d 621, 630 (Tex. Crim. App. 2002); *Pondexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996); *Bausley v. State*, 997 S.W.2d 313, 315 (Tex. App.—Dallas 1999, pet. ref'd). A ruling is clearly erroneous when, after searching the record, an appellate court is left with the definite and firm conviction that the trial court has made a mistake. *Bausley*, 997 S.W.2d at 315. If the record, including the voir dire, the prosecutor's explanation of his peremptory challenges, appellant's rebuttal, and any impeaching evidence, supports the trial court's ruling, then the ruling is not clearly erroneous. *Bausley*, 997 S.W.2d at 315.

## B. Applicable Law

To challenge the State's use of peremptory strikes under *Batson*, a defendant must first make a prima facie showing that the State exercised peremptory strikes on an impermissible basis. *Herron*, 86 S.W.3d at 630; *Bausley*, 997 S.W.2d at 316. Once a defendant makes a prima facie showing of purposeful discrimination, the State must provide a race- or gender-neutral explanation for striking the prospective juror in question. *Miller-El v. Dretke*, 545 U.S. 231, 239 (2005); *Herron*, 86 S.W.3d at 630; *Pondexter*, 942 S.W.2d at 581; *Bausley*, 997 S.W.2d at 316. This step requires an explanation devoid of inherent discriminatory intent. *Bausley*, 997 S.W.2d at 315 (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). An explanation is neutral in this context if the State bases it on something other than the juror's race or gender. *See Hernandez v.*

*New York*, 500 U.S. 352, 360 (1991). Unless discriminatory intent is inherent, the courts will consider the explanation race or gender neutral. *See Hernandez*, 500 U.S. at 360.

If the State provides a race- or gender-neutral explanation for its strikes, the defendant may rebut the State's explanation or show that the explanation was merely a sham or pretext. *See Herron*, 86 S.W.3d at 630; *Pondexter*, 942 S.W.2d at 581; *Bausley*, 997 S.W.2d at 316. To meet this burden, the defendant may call witnesses and introduce evidence just as in any other evidentiary hearing. *Bausley*, 997 S.W.2d at 316At this third step, the persuasiveness of the justification becomes relevant. *See Purkett*, 514 U.S. at 768. The defendant has the ultimate burden of persuasion to establish the truth of his allegations of purposeful discrimination by a preponderance of the evidence. *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). Language, by itself, does not identify members of a suspect class. *See Flores v. State*, 904 S.W.2d 129, 130 (Tex. Crim. App. 1995).

### C. Application of the Law to the Facts

Initially, Cisneros complains that the juror panel lists, jury strike lists of the State, the defendant and the trial court, and the juror information sheets were not included in the record despite his written request. The State responds that these documents are not required to be included in the record and Cisneros did not offer them into evidence at voir dire or during the hearing on his motion for new trial. Cisneros provides no authority for the proposition that juror questionnaires must be among the contents of the clerk's record. The questionnaires are not among those items enumerated by the Rules of Appellate Procedure for inclusion in the record. See TEX. R. APP. P. 34.5(a). A party is only required to return the juror lists to the clerk. See TEX. CODE CRIM. PROC. ANN. art. 35.26 (West 2006). The questionnaires were not filed or

13

introduced into evidence. Accordingly, our review is confined to the record as presented in this appeal.

Following voir dire and the State's peremptory strikes, Cisneros's counsel objected, arguing the State used a peremptory strike against venire-member Rios because he was Hispanic. The State responded that venire-member Rios had asked about whether or not defense counsel spoke Spanish. The State was concerned that because defense counsel stated he did not speak Spanish, the prospective juror may believe he was not able to communicate properly with Cisneros and, as a result, identify more with Cisneros. Cisneros's counsel objected that the State's reason was pretextual because it was not a reasonable deduction from the limited questioning of venire-member Rios, the State did not ask him any questions, and he gave no response when defense counsel stated he did not speak Spanish. The trial court overruled the objection. Cisneros did not call any witnesses or introduce any evidence. *See Bausley*, 997 S.W.2d at 316. It was Cisneros's burden to establish the truth of his allegations of purposeful discrimination. *See Bausley*, 997 S.W.2d at 316. Accordingly, we conclude the trial court did not err when it overruled Cisneros's *Batson* objection during voir dire.

Issue four is decided against Cisneros.

## V. CONCLUSION

The trial court did not err when it denied Cisneros's motion for new trial because he has not shown that his trial counsel was ineffective. Also, the evidence is sufficient to support Cisneros's convictions. Finally, the trial court did not err when it overruled Cisneros's *Batson* objection.

14

The trial court's judgments are affirmed.

_____
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111590F.U05

15



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

EDGAR MANUEL CISNEROS, Appellant

No. 05-11-01590-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-82276-2010.
Opinion delivered by Justice Lang. Justices
Moseley and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 7th day of February, 2013.


_____
DOUGLAS S. LANG
JUSTICE