

# IN THE
# TENTH COURT OF APPEALS

## No. 10-15-00398-CR

**ALEXANDER HARRISON KING,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

## From the County Court at Law No. 2
## McLennan County, Texas
## Trial Court No. 20144334 CR2

## MEMORANDUM  OPINION

A jury convicted Appellant Alexander Harrison King of driving while intoxicated. The trial court sentenced him to 365 days' confinement in the McLennan County Jail and a $4,000 fine.  The trial court suspended imposition of the sentence, placed King on community supervision for twenty-four months, and ordered him to pay $1,500 of the fine.  King filed a motion for new trial, which was denied by the trial court after a hearing.

## Sufficiency of the Evidence

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2016). In his first issue, King claims that the evidence was insufficient to prove that he was operating a vehicle on the evening he was arrested. King does not dispute that he was intoxicated at the time of his arrest.

The Court of Criminal Appeals has expressed our constitutional standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the

prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder "is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The following evidence was presented at trial: DPS Trooper Jarrod Hubbard testified that on April 26, 2014, he was dispatched to investigate a traffic accident in rural McLennan County. In conjunction with Hubbard's testimony, the prosecution played the dash-cam video from Hubbard's patrol car that recorded the events that followed. Hubbard came upon King speaking with a McLennan County Deputy Sheriff in the area of the reported accident. King was highly intoxicated and incoherent. A subsequent blood test revealed that he had a blood-alcohol concentration of 0.224, almost three times the legal limit of 0.08. King could not remember if he had been in a traffic accident and could not remember where his vehicle was located, although he pointed generally in a northerly direction. When asked where he was walking, King indicated that he was going home. Hubbard knew, from his training and experience, that DWI suspects often leave the scene of an accident in order to evade arrest and to avoid jail. Hubbard left King in the custody of the deputy and drove northward to look for King's vehicle.

A short distance away, Hubbard found Marianne Holland sitting on the side of the road close to where a truck had left the roadway and crashed in some nearby trees. A records check on the truck revealed that it was registered to King's mother. On the video, Hubbard asks Holland if she is okay, and she says, yes. She further states, "[Unintelligible] had an accident.[1] I don't know where my boyfriend went. We had an accident, and we can't get the truck out. I don't know where he went at all."

Hubbard testified that Holland told him on more than one occasion that she was the passenger in the truck. Holland admitted this on cross-examination at King's trial, and it was also supported by the video. During her encounter with Hubbard, which lasted approximately thirty minutes, Holland never indicated in any manner that she had been driving the truck. At one point on the video, when Hubbard said to her that King should not have been driving and could have hurt someone, she responds, "I know."

When the deputy brought King to the scene of the accident, Hubbard administered one field sobriety test, which indicated King was intoxicated. Another test was attempted, but King was unable to complete it. Hubbard noticed that King had an injury in the area of his left eye that was consistent with someone who was restrained by a seat belt hitting the steering wheel. The air bags did not deploy in the truck after the wreck.

---

[1]King contends that the video clearly recorded Holland stating "*I* had a wreck." [Emphasis added.] But the video is not as clear as King asserts.

After King was evaluated by emergency medical technicians, Hubbard placed King under arrest for driving while intoxicated. Hubbard then drove King to the hospital to have the injury to his eye further evaluated and treated. They remained there for a number of hours. Hubbard testified that during that time, King never denied being the driver of the wrecked truck.

Contrary to her statements on the video, in her direct testimony at King's trial, Holland testified that she was driving the night of the wreck. She testified that earlier on the day of King's arrest, she and King had been drinking at King's apartment with a friend, Kyle Pratka. She testified that when they left to take Pratka home, she was driving. She stopped for gas and then drove toward a nearby lake with King in the passenger seat. She lost control on a gravel road and wrecked the truck. She and King discussed who would take the blame for the wreck. King agreed to accept responsibility because her driver's license was suspended and she had children to care for. Holland testified that she did not tell Hubbard that she was driving the truck because she assumed that King had already taken the blame for the accident.

Holland testified that after the accident, she went with King to his attorney's office "and we told him that I was driving, we sure did." Holland also provided an affidavit to King's attorney, in which she swore that she was the driver of the vehicle and that no one had ever asked her who the driver was. She did not go to the police with that information upon the advice of King's attorney.

King argues that his conviction should be overturned because the only evidence showing that he was driving the vehicle was Holland's prior inconsistent statement that she was the passenger in the vehicle. Assuming without deciding, however, that a prior inconsistent statement alone is insufficient to support a conviction, we conclude that Holland's statements are not the only evidence establishing that King was operating the vehicle on the night that he was arrested. In addition to Holland's statements to Hubbard that she was a passenger, the evidence establishing that King was the driver of the wrecked truck includes: (1) King fled from the site of the wreck. "Flight from the scene of a crime is circumstantial evidence of guilt." *Nunez v. State*, 215 S.W.3d 537, 541 (Tex. App.—Waco 2007, pet. ref'd). (2) The truck was registered to King's mother. (3) King had a set of keys to the truck in his pocket. (4) Hubbard testified that King never denied being the driver. (5) Hubbard testified that King was injured in a manner consistent with hitting the steering wheel while Holland was not.

King asserts that Hubbard's conclusion regarding the injury to his eye is mere speculation rather than evidence that he was the driver of the truck. Hubbard admitted on cross-examination that the injury could have been suffered by someone sitting in the passenger seat who was not wearing a seat belt. He further testified, however, that both Holland and King told him that they were wearing seat belts when the wreck occurred. Hubbard's testimony that the injury to King's eye is consistent with hitting the steering

wheel is therefore evidence in addition to Holland's prior inconsistent statements that established King was the driver of the wrecked truck.

King further argues that the evidence clearly shows that Holland was the driver. King points to her recantation, her "admission" on the video that she was the driver, her affidavit, her lack of motive to lie, and her acknowledgement that she could be prosecuted for giving false testimony. But the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). By finding King guilty, the jury obviously disbelieved portions of Holland's testimony and believed the evidence discussed above that establishes that King was the driver of the vehicle. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

We conclude that the evidence was sufficient for a rational fact finder to find beyond a reasonable doubt that King was operating the truck on the evening of his arrest. King's first issue is overruled.

## Motion for New Trial

In his second issue, King contends that the trial court erred in overruling his motion for new trial. We review a trial judge's denial of a motion for new trial under an

abuse of discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). "A trial judge abuses his discretion in denying a motion for new trial when no reasonable view of the record could support his ruling." *Colyer*, 428 S.W.3d at 122; *Holden*, 201 S.W.3d at 763. "We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party." *Colyer*, 428 S.W.3d at 122; *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

At a motion for new trial hearing, the judge alone determines the credibility of the witnesses. *Colyer*, 428 S.W.3d at 122; *Salazar*, 38 S.W.3d at 148. Even if the testimony is not controverted or subject to cross-examination, the trial judge has discretion to disbelieve that testimony. *Colyer*, 428 S.W.3d at 122; *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).

King first argues that the trial court should have granted a new trial because he established that his conviction was the result of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d

674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) (same). Under *Strickland*, a defendant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101. To satisfy the first prong, the appellant must prove by a preponderance of the evidence "that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, the appellant must then show that "there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id*. Absent both showings, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The standard for evaluating a trial court's denial of a motion for new trial does not change merely because a defendant raises ineffective assistance of counsel. The appellate court does not review such a claim *de novo*, but determines whether the trial court abused its discretion in denying the claim. *Cueva v. State*, 339 S.W.3d 839, 857 (Tex. App.—Corpus Christi 2011, pet. ref'd); *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd); s*ee also Schoenbauer v. State*, 85 S.W.3d 400, 402 (Tex. App.—Tyler 2002, no pet.)

("When the appellant has presented evidence on his counsel's alleged ineffectiveness at a hearing on a motion for new trial, we review the application of the test pronounced in *Strickland* . . . through the prism of an abuse of discretion standard."). "We must determine whether the trial court's application of *Strickland* and its subsequent decision to deny the motion for new trial were so outside the zone of reasonable disagreement that they are subject to reversal." *Schoenbauer*, 85 S.W.3d at 402.

King argues that his trial counsel was ineffective for failing to call Andrea and Gabriel McGrew (King's mother and stepfather) to testify.[2] During the hearing on the motion for new trial, the McGrews both testified that they had talked with Holland after King's arrest and that she had told them that she had been driving the truck when it wrecked. Holland was "inconsolable" and "sobbing" during their telephone conversations, and she told the McGrews that King had "taken the fall" for her, which she repeated numerous times. The McGrews also testified that King was unfamiliar with the area where the wreck occurred because he was originally from Cedar Park, but Holland knew exactly how to take them to the scene of the wreck.

King's trial counsel testified that he did not call the McGrews because he believed their testimony was inadmissible hearsay and was merely cumulative and corroborative of Holland's. He believed Holland's affidavit was sufficient to rebut the prosecution's

---

[2] To the extent King also contends that his trial counsel was ineffective for failing to call Kyle Pratka, who had been drinking with King and Holland before Holland's arrest, to testify, the complaint is inadequately briefed and presents nothing for review. TEX. R. APP. P. 38.1(h), (i).

accusation that she had made up her story shortly before trial. Introduction of the affidavit also eliminated the opportunity for the prosecutor to cross-examine a live witness. King's trial counsel further believed that the jury would not credit the McGrews' testimony because of their relationship to King.

King argues that his trial counsel's performance was deficient because there was no reason for him not to call the McGrews to testify. King contends that, contrary to his trial counsel's belief, the statements given to the McGrews by Holland would not have been excludable as hearsay. King further claims that trial counsel's belief that the jury would not have believed the McGrews because they were his parents was not reasonable under the circumstances. King also argues that he was prejudiced by his trial counsel's failure to call the McGrews to testify. King asserts that the identity of the driver was the only issue in the case, that Holland was the only witness who had personal knowledge of who had driven,[3] and that she had been impeached by the prosecution. King contends that the McGrews' testimony would therefore have significantly influenced the jury because it undisputedly corroborated Holland's testimony.

"Counsel's failure to call witnesses at the guilt/innocence stage of a trial is irrelevant absent a showing that the witnesses were available and that [a]ppellant would have benefitted from their testimony." *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—

---

[3] King states in his brief that he "did not testify, and in fact was so drunk at the time he did not remember what had happened."

Tyler 1996, pet. ref'd) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)). Here, even if King established that the McGrews' testimony would have been admissible, he did not show that he would have benefitted from the testimony to such an extent that his trial counsel was ineffective for not calling the McGrews to testify. Andrea McGrew's demeanor on cross-examination during the hearing on the motion for new trial was argumentative. *See Sanders v. State*, 346 S.W.3d 26, 34 (Tex. App.—Fort Worth 2011, pet. ref'd) (stating that it may be reasonable trial strategy for counsel to choose not to call witnesses he believes are unreliable and unbelievable). The McGrews' testimony would also have been cumulative of Holland's affidavit. *See Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988) (explaining that appellant would not have benefitted from cumulative testimony); *Tutt*, 940 S.W.2d at 121. The admission of Holland's affidavit into evidence had shown that shortly after the accident and long before the trial, she claimed she was the driver.

King argues that the McGrews' testimony was not cumulative in at least one respect—they would have testified about King's unfamiliarity with the area where the wreck occurred and Holland's knowledge of the area because she took the McGrews to see where the wreck occurred. But the benefit of such testimony is questionable. At the hearing on the motion for new trial, Andrea McGrew testified that, while King was originally from Cedar Park, he had been living in the Waco area for approximately seven months while attending Texas State Technical College. King could have become familiar

with the area in that amount of time. Also, the McGrews' testimony would not have negated the fact that King could have been directed by Holland to the location where the accident occurred.

King further claims that his trial counsel was ineffective for not objecting to Holland's statements to Hubbard on the video as hearsay. This issue was not raised in King's motion for new trial or during the hearing on the motion for new trial. Therefore, the trial court could not have erred in overruling the motion for new trial on this issue. Furthermore, because the issue was not raised in King's motion for new trial or during the hearing on the motion for new trial, the record is silent as to trial counsel's reasons for his decision not to object.

To overcome the strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

In light of the foregoing, we conclude that King did not establish by a preponderance of the evidence that his trial counsel provided ineffective assistance.

We now turn to King's argument that the trial court erred in overruling his motion for new trial because he is actually innocent of driving while intoxicated. To the extent an "innocence" claim is cognizable outside of a successive habeas petition,[4] the trial court did not err in determining that King was not actually innocent.

The courts have recognized two types of innocence claims. "The first—a *Herrera* claim—is a substantive claim in which the person asserts a 'bare claim of innocence' based solely on newly discovered evidence." *Ex parte Brown*, 205 S.W.3d 538, 544 (Tex. Crim. App. 2006) (citing *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). Establishing such a claim "is a Herculean task," requiring a defendant to show "by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new evidence." *Id*. at 545 (quoting *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002)). "The term 'newly discovered evidence' refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence." *Id*.

King argues that Holland's statements to the McGrews after the accident constitute "newly produced" evidence that he is innocent. However, an actual innocence

---

[4] *See State v. Young*, 265 S.W.3d 697, 705 (Tex. App.—Austin 2008, pet. denied.) ("'Actual innocence' is a term of art that has consistently been used by Texas courts to describe a basis for collaterally attacking, through habeas corpus, a final criminal conviction on constitutional grounds.").

claim requires "newly discovered" or "newly available" evidence, not evidence that is "newly produced." As noted, the evidence must have been unknown to the defendant at the time of trial and must have been evidence that could not have been known by him even with the exercise of due diligence. *Id*. The substance of the McGrews' testimony was known to King before trial. Therefore, King did not identify any newly discovered evidence in this case.

"The other type of innocence claim—a *Schlup* claim—is one that 'does not by itself provide a basis for relief,' but is intertwined with constitutional error that renders a person's conviction constitutionally invalid." *Id*. at 544-545 (quoting *Schlup v. Delo*, 513 U.S. 298, 315, 115 S.Ct. 851, 861, 130 L.Ed.2d 808 (1995)). It is "a procedural claim in which applicant's claim of innocence does not provide a basis for relief, but is tied to a showing of constitutional error. . . ." *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002). A *Schlup* claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id*. at 676 (quoting *Herrera*, 506 U.S. at 404, 133 S.Ct. at 862). A defendant raising such a claim must show "that it is more likely than not that no reasonable juror would have convicted him. . . ." *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996); *see also Franklin*, 72 S.W.3d at 676.

The only constitutional error alleged by King that could arguably provide relief under *Schlup* is that his conviction was the result of ineffective assistance of counsel. But

because we have concluded that King did not establish that his trial counsel provided ineffective assistance, we conclude that King also had no basis for an innocence claim under *Schlup*.

Because we conclude that King failed to establish either ineffective assistance of counsel or actual innocence, we hold that the trial court did not abuse its discretion in denying King's motion for new trial. King's second issue is overruled.

Having overruled both of King's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed July 26, 2017
Do not publish
[CR25]

